LEE, P.J.,
 

 for the Court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. In 1998, David Hill and David Min-yard obtained title to a tract of approximately twenty-five acres of land in Oxford, Mississippi in the division of land that they owned as co-tenants with a third party, Kenneth Coleman. In addition to the twenty-five acres, Hill and Minyard assumed approximately $537,000 of the debt, including $167,375 worth of improvements on a ten-acre parcel of the twenty-five acres.
 

 ¶ 2. That same year, Jim Aron became associated with Hill and Minyard. The parties entered into an agreement where Aron would receive a one-third interest in the property. In exchange for an interest in the property, Aron was obligated to pay Hill and Minyard $125,000; to assume one-third of the mortgage note payments and taxes; and to complete the development on the property in order to sell the commercial lots. Aron had difficulty paying the $125,000, but ultimately, he paid Hill and Minyard by deeding other real estate to them.
 

 ¶ 3. After Hill and Minyard conveyed a one-third interest in the property to Aron, Aron then conveyed the one-third interest to a limited liability company, which had been renamed as “HAM Management and Development Company” (HAM), owned by Hill, Aron, and Minyard. Aron then began working on the property in accordance with prior plans and specifications. John Lewis, HAM’s engineer, provided Aron with the specific work details, including a breakdown of the different areas of construction to be completed and the cost estimate for each area. The total construction estimate was $692,000.
 

 ¶ 4. Aron began working on the property in the fall of 1998. In January 1999, Aron had difficulty paying the construction costs and ceased working on the project. On May 19, 2003, Aron filed for personal bankruptcy. During this period, Aron was late making payments on the note and ultimately ceased paying his share of the note after he filed suit.
 

 ¶ 5. On July 30, 2004, in the Lafayette County Chancery Court, Aron filed suit against HAM requesting an accounting of each partner’s interest in HAM and a judgment for $261,634.39. Aron contends that the monetary amount represents the total amount of reimbursements he is entitled to for the improvements he made on the property. HAM filed an answer, affirmative defenses, and several counterclaims.
 

 ¶ 6. At one point, the case was removed to the U.S. Bankruptcy Court for the Northern District of Mississippi. Ultimately, the bankruptcy judge dismissed the proceeding in favor of adjudication of
 
 *732
 
 the merits in the Lafayette County Chancery Court.
 

 ¶ 7. After numerous motions and pleadings were filed by both parties, the case was heard by the chancellor in March 2007. The chancellor determined that Aron was entitled to a judgment in the amount of $471,958. The chancellor denied all other requests for relief, including HAM’s counterclaim.
 

 ¶ 8. At some point after the chancellor’s judgment, HAM paid the $471,958 judgment to Aron. Aron accepted the money and then perfected his appeal. In his appeal, Aron raises the following assignments of error: (1) the chancellor incorrectly interpreted the agreement’s intended definition of “basis”; (2) the chancellor committed prejudicial error in determining Hill’s and Minyard’s bases; and (3) the chancellor erred in assessing his interest in HAM without proof of damages. HAM also cross-appeals, asserting that the chancellor erred in awarding Aron a monetary amount in excess of the amount of Aron’s investment and that Aron is barred from appealing due to his acceptance of the judgment payment.
 

 STANDARD OF REVIEW
 

 ¶ 9. The Court will not disturb a chancellor’s findings if they are supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002). The principle of “manifest error” applies only to findings of fact.
 
 Boggs v. Eaton,
 
 379 So.2d 520, 522 (Miss. 1980). However, questions of law are reviewed de novo.
 
 Russell v. Performance Toyota, Inc.,
 
 826 So.2d 719, 721(¶ 5) (Miss. 2002).
 

 DISCUSSION
 

 ¶ 10. We must first address one of HAM’s issues on cross-appeal — that Aron is barred from appealing due to his acceptance of the judgment payment. Generally, a litigant who accepts the benefits of a judgment cannot then appeal the judgment.
 
 Adams v. Carter,
 
 92 Miss. 579, 592, 47 So. 409, 410 (1908). However, the supreme court has recognized an exception to this rule “in cases where the amount recovered is not contested on appeal.”
 
 Taylor v. Morris,
 
 609 So.2d 405, 408 (Miss. 1992). In
 
 Investors Property Management, Ltd. v. Watkins, Pitts, Hill & Associates,
 
 511 So.2d 1379, 1383 (Miss.1987), the supreme court observed as follows:
 

 We have found several cases apparently maintaining the proposition that, when the plaintiff accepted money paid,
 
 he may still appeal, where the object of the appeal is simply to have a judgment modified by increasing his demand, as where sufficient damages had not been alloived,
 
 or where proper interest had not been allowed.
 

 (quoting
 
 Adams,
 
 92 Miss, at 590-91, 47 So.2d at 410). In his appeal, Aron’s main contention is that the monetary award was insufficient. HAM concedes that Aron was owed $371,958 according to the agreement, but it argues that the chancellor erred in awarding Aron an additional $100,000 as the fair value of his interest in the property. Although part of the judgment is contested, we find it appropriate in this instance to discuss whether the chancellor erred in determining the value of Aron’s interest in the property.
 

 ¶ 11. The chancellor relied upon an appraisal submitted by Filo Coats, Aron’s expert witness, to determine the value of the real property as of May 19, 2003. Aron filed a voluntary petition in the bankruptcy court on that day and was effectively dissociated from the limited lia
 
 *733
 
 bility company.
 
 See
 
 Miss.Code Ann. § 79-29 — 307(l)(d) (Rev.2001);
 
 see also
 
 Miss. Code Ann. § 79-29-602 (Rev.2001) (distribution upon dissociation). Coats determined the value of the property to be $2,760,000. Robert Church, HAM’s Certified Public Accountant, determined Hill’s and Minyard’s bases in the property to be $1,320,244. This amount included improvements made to the property prior to Aron’s involvement. The chancellor found that Church’s report was the most reliable information produced establishing Hill’s and Minyard’s bases in the property. However, the chancellor found that Church’s accounting did not give credit for Aron’s $125,000 land conveyance to Hill and Minyard. Thus, the chancellor reduced Hill’s and Minyard’s bases to $1,195,244.
 

 ¶ 12. The chancellor calculated Aron’s basis by adding together Aron’s construction costs, note payments to two banks, payments to Hill and Minyard, and the property transferred to Hill and Minyard. The chancellor did not include a payment of $111,598.62 made by Aron because Aron did not produce evidence to support this transaction. The chancellor found Aron’s basis to be $371,948. Chris Jones, Aron’s accountant, testified that Aron’s note payments and development expenditures totaled $264,496.40.
 

 ¶ 13. After deducting the bank debt of $485,427, the chancellor determined the net value of the property to be $2,274,573. The chancellor then deducted Aron’s basis and Hill’s and Minyard’s bases from the net value to determine the net available amount for distribution of $707,371. The chancellor then stated that: “If the Court were to divide the net value among the three principals in HAM, their respective interest would be $235,790.33.”
 

 ¶ 14. However, the chancellor found that Aron did not comply with the terms of his agreement with HAM and reduced the fair value of Aron’s interest to $100,000. In the agreement between the parties, Aron was responsible for completing all necessary acts to prepare the property for construction of the commercial buildings and for the eventual sale of the property. Lewis testified that he provided Aron with the specific work details and cost estimates. The chancellor found that Aron, after abandoning the project in January 1999, had only completed 45% of the dirt work and 95% of the storm-drainage system. Aron failed to perform any work on the french-drain system, the sanitary system, the water-distribution system, or the street. The chancellor concluded that Aron only performed 24% of the total work which he was required to perform under the terms of the agreement. The chancellor also noted that Aron had written bad checks to Hill and Minyard, violated a city ordinance, failed to pay a subcontractor which caused a construction lien to be placed on the property, failed to make timely payments, and ultimately quit making payments after he filed suit.
 

 ¶ 15. We find that there was substantial evidence to support the chancellor’s award of $471,958 to Aron. We do not find any error by the chancellor in reducing Aron’s share to $100,000 for his fair value of his interest in the property because he failed to comply with the contract terms. Thus, we affirm the judgment of the chancellor.
 

 ¶ 16. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS,
 
 *734
 
 CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY.