**JANICE M. HANLEY, Plaintiff**

v.

**EDWARD E. HANLEY, III, Defendant**

Civil No. 778/1990

Territorial Court of the Virgin Islands
Div. of St. Croix

May 30, 1991

LEE J. ROHN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

HENRY L. FEUERZEIG, ESQ., St. Thomas, V.I., *for defendant*

ELTMAN, *Judge*

### MEMORANDUM OPINION

Asserting an interest in a military retirement pension paid each month to her former husband, the plaintiff seeks its partition pur-

suant to the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408 ("USFSPA"). Because the issue of the pension was an integral part of earlier divorce proceedings between the same parties, this action is barred by the doctrines of res judicata, collateral estoppel, and equitable estoppel, and the defendant's motion for summary judgment will be granted.

## FACTS

Janice M. Hanley and Edward E. Hanley, III, were married in 1957. During most of their marriage, the husband was a member of the United States Air Force. Upon his retirement from military service, he began receiving a monthly pension of $2,233.32. He filed for divorce in 1984. The proceedings, at least as to distribution of property, child support and alimony, were vigorously contested.

The military retirement pension received by the husband was repeatedly discussed during the divorce trial, primarily with respect to the wife's claim for alimony. Although he proposed to divide equally the couple's interests in their real property, Mr. Hanley objected to paying alimony, contending that Ms. Hanley was financially self-sufficient. In a colloquy with the Court (Exhibit J, p. 5), Ms. Hanley's attorney at the time, Warner Alexander, Esq., specifically referred to the mechanism in the federal statute which provides for direct payments from the military pension to the spouse "where the Court sets, imposes or awards a decree of alimony." (Motion for summary judgment, Exhibits I and J). The trial judge, the Honorable Raymond L. Finch, inquired of counsel whether the federal law required the Court to follow any specific procedures "assuming I find a need for alimony." (Exhibit J, pp. 10–11.) Judge Finch observed that Congress intended "to allow pensions to be in some fashion attached, or in some way appropriated for alimony payment which [before the enactment of the USFSPA] could not have been done." In closing argument, Ms. Hanley's attorney pointed to the pension as a partial source of a requested monthly alimony award of $1,500.00 to $2,000.00 (Exhibit J, pp. 18–19)

A decree of divorce, dated June 14, 1984, ordered Mr. Hanley to pay alimony of $500.00 a month or, at his option, in a lump sum of $50,000.00. The decree was amended in other respects on June 18, 1985. Even before the first decree was entered, Mrs. Hanley sought reconsideration of what apparently had been orally announced by the Court as the proposed decree. The somewhat ambiguous motion

(Exhibit B) seemed to complain about both the award of child support and alimony, but it nevertheless cited Mr. Hanley's military pension as one source of income to him. Other than her motion and Mr. Hanley's unsuccessful 1988 request for modification of alimony, there were no other post-trial proceedings. Neither side appealed. Now, some six years after the amended divorce decree, the plaintiff has filed what she styles an action for partition of the defendant's non-disability military retirement pension, pursuant to the USFSPA. In his motion for summary judgment, Mr. Hanley contends, among other things, that this action is barred by res judicata, collateral estoppel and equitable estoppel.

## DISCUSSION

The federal statute, 10 U.S.C. § 1408(c)(1), provides, in relevant part:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court.* (Emphasis added.)

Congress passed the USFSPA in remedial response to McCarty v. McCarty, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589, (1981), in which the U.S. Supreme Court held that federal military retirement statutes precluded state courts from dividing military nondisability pensions. The USFSPA became effective in 1983. According to its plain terms, the USFSPA merely removes the preclusive effect, as pronounced in McCarty, of prior federal law upon state divorce courts. It manifestly does not *require* a divorce court to divide a military retirement fund between the parties. Koenes v. Koenes, 478 N.E.2d 1241 (Ind. 1985); Grant v. Grant, 685 P.2d 327 (Kan. 1984); Chase v. Chase, 662 P.2d 478 (Alaska 1983). The USFSPA did not undermine state or territorial statutory or common law concerning the treatment of military benefits in a divorce. Koenes v. Koenes, supra at 1242.

As the defendant's references to the trial transcript make clear, all of the participants in the divorce litigation understood that the Court could consider the husband's military pension as an income source for purposes of an award of alimony. He argues that, since Ms. Hanley had the opportunity at that time to assert a claim to an interest in the pension, res judicata bars this new action. Alternatively, he

contends that the trial judge took the pension into account in fashioning an alimony award and, therefore, the issue having been litigated and decided, collateral estoppel precludes the action for partition. While the plaintiff does not dispute that the question of the pension was addressed at trial, she nevertheless maintains that, because the decree does not specifically refer to the pension, the present action for partition is not barred by either res judicata or collateral estoppel.

The transcript reveals that Ms. Hanley's position with respect to the pension was somewhat conflicting and inconsistent. Most of the time, the parties agreed that the pension was relevant, if at all, with respect to an award of alimony, i.e., that it should be considered as part of the husband's total income flow. However, at one point (Exhibit I, p. 95), Ms. Hanley testified on direct examination:

Q Did you take care of your children and your home yourself?
A Yes, sir, I made all their clothes. I never went to a beauty shop. I even made my husband's three piece suits on occasions. I think I did more than my fair share as a wife.
Q And, do you feel by reason of that you have some claim for financial assistance now?
A Yes, I do. I feel that I'm entitled to one half of his retirement salary.
Q You feel that you earned that together?
A Yes, we did.

That apparently was the only point at which Ms. Hanley asserted an ownership interest in the pension, which is the same claim she now makes in this action for partition. Other than that testimony, she maintained throughout the divorce trial that Mr. Hanley had the means to pay alimony at least in part because of the pension.

It is clear that Judge Finch treated the military pension in one of two ways. First, he may have viewed the pension as the husband's property and considered it as partial evidence of his means in determining alimony pursuant to 16 V.I.C. § 109(3).[1] Alternatively, he may have regarded the pension as personal property jointly owned by the

---

[1] § 109. Whenever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree:

(3) for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support or maintenance of such parties.

parties but did not distribute it or, more precisely, did not provide for "delivery to the wife of her personal property [i.e., her interest in the pension] in the possession or control of the husband at the time of giving the judgment." 16 V.I. § 109(4). Because the working assumption at trial was that the pension belonged to Mr. Hanley, it is reliable to conclude that Judge Finch chose the first option.

The transcript excerpts as a whole demonstrate that everyone contemplated that alimony might be based upon the pension. Even Ms. Hanley's comment that she was entitled to one half of the "retirement salary" was a gratuitous answer to her attorney's question as to whether she had "some claim for financial assistance now." Her motion for reconsideration, again, referred to the retirement pension as his income and made no claim to part ownership by her. Finally, the divorce decree itself appears to be complete; it leaves no matters for future determination. What is certainly clear is that Ms. Hanley never brought her briefly asserted claim of part ownership to the attention of the Court once the decree and amended decree were entered. That there might be two possible interpretations of the divorce decree does not establish the existence of a genuine issue of material fact sufficient to warrant a trial, particularly where, in opposition to the motion for summary judgment, the plaintiff has neither proffered nor suggested the existence of any other evidence of the trial judge's intent.

█ The plaintiff cites three Texas cases as support for her contention that the decree must have expressly adjudicated ownership of military retirement benefits. Eddy v. Eddy, 710 S.W. 2d (Tex. 1986); Forsman v. Forsman, 694 S.W. 2d 112 (Tex. 1985); Harkrider v. Morales, 686 S.W. 2d 712 (Tex. 1985). Those cases do not support her argument. They derive from Texas community property laws and, unlike the instant case, involve issues unique to the period between McCarty and the enactment of the USFSPA. More to the point, Virgin Islands caselaw teaches that the decree is properly "treated as a final adjudication of the rights of the parties at the time it is entered, and the court which entered it should be presumed, in the absence of a direct appeal, to have given appropriate consideration to the circumstances which should have affected its judgment." Viles v. Viles, 4 V.I. 415, 422, 316 F.2d 31, 34 (3d Cir. 1963).

The defendant correctly notes that the closely related doctrines of res judicata and collateral estoppel are both implicated here. In Bradley v. Pittsburgh Board of Education, 913 F.2d 1064, 1070 (3d

Cir. 1990), the Third Circuit reviewed the distinction between the two related concepts:

> Claim preclusion, otherwise referred to as res judicata, gives dispositive effect to a prior judgment as if the particular issue, albeit not litigated in the prior action, could have been raised. See McNasby v. Crown Cork & Seal Co., 888 F.2d 270, 275 (3d Cir. 1989), cert. denied, — U.S. —, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). On the other hand, issue preclusion, also known as collateral estoppel, bars relitigation only of an issue identical to that actually adjudicated in the prior action. See Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).

## I. Res Judicata

Res judicata is defined in the Restatement (Second) of Judgments, § 24:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a 'transaction' and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectation or business understanding or usage.

The pragmatic criteria of Restatement § 24(2) all support the conclusion that this partition action arises from the same transaction as was considered in the divorce. Ms. Hanley had the same opportunity and motivation then as now to litigate any claimed ownership in the military pension. The same facts which support her claim now were in issue in the divorce, and the parties as well the trial court could reasonably have been expected to have treated them as part of the same "trial unit" at that time. Where a cause of action has been already decided, res judicata bars the parties from relitigating it. Sheen v. Continental Insurance Co., 18 V.I. 164 (Terr. Ct. 1982).

In a technical sense, because the claim for relief here, i.e., partition, is different than the claim suggested in the divorce action,

res judicata might not be considered to apply. Judge Young made a similar observation in Dyndul v. Dyndul, Civil No. 79-113 (D.V.I. Div. St. Croix, Hem. Opin., October 31, 1979) (Exhibit G). In Dyndul, Judge Young was writing after the Third Circuit held that the District Court had exceeded its jurisdiction by distributing non-homestead marital property in Florida and Wisconsin. Dyndul v. Dyndul, 13 V.I. 376, 541 F.2d 132 (3d Cir. 1976). However, the circumstances are different here. Had Ms. Hanley pressed a claim in the divorce action to an ownership interest in the pension, the Court would have been empowered, in effect, to partition the pension pursuant to 16 V.I.C. § 109(4). Cf., Morris v. Morris, 20 V.I. 249 (Terr. Ct. 1984). The claim for relief thus would have been the same in the divorce action as it is now. Therefore, to the extent that the plaintiff's claim to a share of the military pension was not litigated or determined in the divorce, she is barred from raising it now by the doctrine of res judicata because she had the opportunity and the interest to raise it at that time.

## II. Collateral Estoppel

■ Restatement (Second) of Judgments § 27 refers to collateral estoppel:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

For a party to be collaterally estopped in a later action,

(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment: and (4) the determination must have been essential to the prior judgment.

Beloit Power Systems v. Hess Oil V.I. Corp., 19 V.I. 519, 531 (D.V.I. 1983), aff'd. 757 F.2d 1427 (3d Cir. 1985), citing Haize v. Hanover Insurance Co., 536 F.2d 576 (3d Cir. 1976). Since, as the record demonstrates, the issue of the pension was litigated and adjudicated years ago in the divorce action, the plaintiff is collaterally estopped from having it heard again at this point.

### III. Equitable Estoppel

■ As the defendant contends, summary judgment should also be granted on the basis of equitable estoppel. Since June, 1984, Ms. Hanley has received the benefits of the alimony provisions of the divorce decree, pursuant to which Mr. Hanley has been paying her $500.00 per month. That decree was modified in June, 1985, to also permit Ms. Hanley to occupy the homestead rent-free and to rent a part of the property and retain that income. In fashioning the alimony award, the divorce court obviously considered the pension as belonging to Mr. Hanley and therefore as a source of income to him. Ms. Hanley is now equitably estopped from taking a position inconsistent with her conduct during the years when she accepted the advantages of the alimony award. Adams v. Adams, 358 N.E.2d 734 (Ill. 1976); McDonald v. Neale, 182 N.E.2d 366, 371 (Ill. 1962). Even to the extent that a partition award might be prospective only, i.e., to future monthly pension receipts, the extant divorce decree with its ongoing alimony provision likewise would bar the plaintiff from prevailing on a claim to prospective pension receipts.

### CONCLUSION

For the reasons detailed above, the motion for summary judgment will be granted and the complaint will be dismissed. The defendant's other grounds for his motion for summary judgment, i.e., laches, waiver, lack of subject matter jurisdiction and failure to state a claim, need not be decided under the circumstances.

### SUMMARY JUDGMENT

This matter is before the court on the defendant's motion for summary judgment. In accordance with the memorandum opinion of this date, it is hereby

ORDERED, ADJUDGED and DECREED that the complaint is dismissed, with prejudice.