609 So.2d 405 (1992)
James TAYLOR, Jr.
v.
James L. MORRIS.
No. 89-CA-1029.
Supreme Court of Mississippi.
August 26, 1992.
*406 Frank A. Wood, Jr., Watkins & Eager, E. Michael Marks, Jackson, for appellant.
Anselm J. McLaurin, McLaurin & McLaurin, Brandon, for appellee.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
McRAE, Justice, for the Court:
James L. Morris brought suit against James Taylor in the Chancery Court of Rankin County seeking specific performance of a land sales contract. The court entered a default judgment against Taylor, but Taylor steadfastly refused to convey the land. At a subsequent hearing, which Taylor did not attend, the court found Taylor in contempt. At the same hearing, apparently upon an ore tenus motion by Morris, the court found that Taylor owned only a one-half (1/2) interest in the subject property and amended the default judgment so as to abate the contractual purchase price pro rata. Taylor appeals the amended judgment, assigning the following as error:
The trial court erred in substantively amending its Default Judgment by abating the contract price of the property without providing Taylor with notice or opportunity to be heard.
We hold that, although Taylor did not receive adequate notice of the hearing and motion, the error is harmless since there is no conceivable set of facts under which Taylor could have prevailed.

FACTS AND PROCEDURAL HISTORY
On October 3, 1988, Taylor and Morris entered into a written contract wherein Taylor agreed to convey a 5.63-acre tract of land in Pearl, Mississippi, to Morris for $39,410. Morris timely tendered the purchase price, but Taylor refused to accept the tender or to make the conveyance.
Morris filed a Complaint for Specific Performance on March 31, 1989, and served it upon Taylor on April 10, 1989. Taylor failed to appear, and on June 27, 1989, the chancery court entered a default judgment ordering Taylor to convey the 5.63-acre tract to Morris within ten days upon tender of $37,410.
Taylor declined to abide by the judgment, so on July 12, 1989, Morris filed a Motion to Find Defendant in Contempt of Court. On the same day, Morris filed a Notice of Hearing on the Motion for Contempt, setting July 21, 1989, as a hearing date. The Notice of Hearing was not served on Taylor until July 17, 1989.
On July 21, 1989, the Chancellor entered an order finding that Taylor had not had the necessary five days notice and rescheduled the hearing for July 27, 1989. Morris mailed Taylor a notice of the July 27 hearing on July 21, 1989.
Taylor did not appear at the July 27 hearing. The chancellor entered an order, filed on July 27, 1989, finding Taylor in contempt of court and directing that he be placed in jail. The order also amended the default judgment to find that Taylor owned only a one-half undivided interest in the subject property. The amount of tender required of Morris was halved from $37,410 to $18,705 to reflect smaller interest to be acquired. Taylor was taken into custody.
An Agreed Order filed on July 31, 1989, temporarily released Taylor from jail. The Order provided that Taylor should report back for continued confinement if he had not executed a deed by August 7, 1989. The Order also granted the court the authority to enter a judgment "which shall act as a conveyance" if Taylor had not executed a deed by August 7. Taylor executed no deed.
On August 7, 1989, Taylor served on Morris a Motion to Set Aside Judgment and Order of Contempt. The motion was filed the following day. Morris filed a Motion to Enter Judgment Divesting Defendant of Title on August 9, 1989. In an Order filed on August 23, 1989, the chancellor denied Taylor's Motion to Set Aside Judgment and Order of Contempt and granted Morris's Motion to Enter Judgment Divesting Defendant of Title.
*407 On August 29, 1989, Morris forwarded Taylor a check for $18,705. Taylor cashed the check, and final payment was made on August 30 or 31, 1989.
Taylor filed a notice of appeal on September 8, 1989. On January 19, 1990, Morris filed a motion in this court to dismiss the appeal.

LAW
Before discussing the merits of Taylor's appeal, we shall address Morris' attacks upon the validity of the appeal itself. Morris first argues that Taylor did not file his notice of appeal within the thirty-day time limit established by Miss.Sup.Ct.Rule 4(a). The order that amended the Default Judgment was filed on July 27, 1989; Taylor filed his Notice of Appeal more than thirty days later on September 8, 1989. The record reflects that Taylor served his Motion to Set Aside Judgment on August 7, 1989. Although Taylor's Motion to Set Aside is nominally a Rule 60 motion, it requests relief in character with a Rule 59(e) motion and was filed within ten days of the judgment from which Taylor appeals.[1] It must therefore be treated as a Rule 59 motion. See Bruce v. Bruce, 587 So.2d 898, 904 (Miss. 1991); Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc., 784 F.2d 665, 669 (5th Cir.1986). A timely Rule 59 motion stops the running of the thirty-day time limit for appeal. Miss.Sup.Ct. Rule 4(d). Taylor's motion was timely filed (see note 1, supra, and accompanying text). Therefore, the thirty day time limit for appeal began to run anew on August 23, 1989, when the chancellor entered an order denying Taylor's motion. See Miss.Sup.Ct. Rule 4(d) (where party files timely motion under Rule 59, "the time for appeal for all parties shall run from the entry of the order denying [the motion]"). Taylor filed his Notice of Appeal less than thirty days after the August 23 order. The appeal was timely.
Morris also argues that Taylor waived his right to appeal by acknowledging his contempt of court in the July 31 Agreed Order under which he was temporarily released from jail. The Agreed Order makes no reference whatsoever to the amendment of the Default Judgment, so this argument is meritless.
Morris additionally contends that Taylor waived his right to appeal by accepting and cashing the $18,705 check. Morris cites Adams v. Carter, 92 Miss. 579, 47 So. 409 (1908), which holds that
a party cannot proceed to enforce and have the benefit of such portions of a judgment as are in his favor, and appeal from those against him; in other words, that the right to proceed on a judgment and enjoy its fruits, and the right to appeal therefrom, are totally inconsistent positions. The election to pursue one course must be deemed an abandonment of the other.
Adams, 47 So. at 410; see also Madison County v. City of Canton, 171 Miss. 547, 158 So. 149, 150 (1934); 4 Am.Jur.2d Appeal and Error § 250, 251, 258 (1962); 4 C.J.S. Appeal & Error § 215, 216 (1957).
Taylor acknowledges the rule but argues that it applies only in cases arising at law and not those arising in equity. See Madison County, 158 So. at 150 ("a party cannot accept a portion of a judgment favorable to him and appeal from that which is unfavorable in a court of law" (emphasis added)); see also Adams, 47 So. at 410-12 (noting that Court was dealing with judgment at law). Morris counters by noting that subsequent to the adoption of the Mississippi Rules of Civil Procedure, the distinction between actions at law and actions in equity has largely disappeared. See MRCP Rule 54(a) comment ("There is no longer any purpose in preserving a technical distinction between a decree and a judgment").
Both parties miss the point. We agree that the Rules of Civil Procedure *408 have, for most purposes, abrogated the distinction between judgments in law and judgments in equity. Contrary to Taylor's premise, however, Adams and Madison County do not draw the line between equitable and legal judgments per se; instead, they distinguish between judgments which are appealed from in part and judgments which are appealed from as an entirety. As Adams plainly explains, a recovery of a monetary judgment is inconsistent with an appeal only where the appeal relates to the entire judgment  including the part recovered. In Adams, the plaintiff obtained a judgment for $8,228. He collected the judgment, but nevertheless appealed, claiming that he was owed more. In their pleadings, the defendant/appellees had denied all liability. In holding that the plaintiff had waived his right to appeal by recovering the judgment, this Court emphasized that "the appellant obtained an appeal, not from that part of the judgment disallowing the [amount demanded in excess of $8,228] only, but from the judgment as a whole  the entire judgment." Adams, 47 So. at 409. In essence, the Court was saying that a party cannot keep the baby and simultaneously have the baby thrown out with the bath water. The only reason the Court drew a distinction between judgments at law and judgments in equity is because, according to Adams, a party could appeal either all or part of a judgment in equity while judgments at law could only be appealed in their entirety. Id. It is thus the nature of the appeal, and not the type of judgment, which determines whether a party may first collect a judgment which favors him in part. In any event, this Court recently repudiated Adams's assumption that judgments at law could not be appealed in part. See Davis v. Noblitt & Capers Elec. Co., Inc., 594 So.2d 610, 613 (Miss. 1992); see also Yazoo & M.V.R. Co. v. Scott, 108 Miss. 871, 892, 67 So. 491, 495 (1914).
Taylor has, like the plaintiff in Adams, appealed from the judgment as a whole. The waiver rule which Morris seeks to invoke would therefore apply. This Court has recognized an exception to the rule, however, in cases where the amount recovered is not contested on appeal. In Investors Property v. Watkins, Pitts, Hill & Assocs., 511 So.2d 1379, 1383 (Miss. 1987), we recently observed:
We have found several cases apparently maintaining the proposition that, when the plaintiff accepted money paid, he may still appeal, where the object of the appeal is simply to have a judgment modified by increasing his demand, as where sufficient damages had not been allowed, or where proper interest had not been allowed.
(emphasis in original) (quoting Adams, 47 So. at 410). Adams also noted that a party who recovers a monetary judgment does not waive his right to appeal where the appellant is "entitled to retain the sum he ... received, and [where] the only question that could be raised on appeal [is] whether he [is] entitled to recover more." This exception is universally recognized in the caselaw and the treatises. See, e.g., Richards v. Richards, 430 S.W.2d 18, 20-21 (Tex.Ct.Civ.App. 1968) ("Where an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery."); Buckley v. Snapper Power Equipment Co., 61 Wash. App. 932, 813 P.2d 125 (Wash. Ct. App. 1991); Ford v. Ford, 105 Nev. 672, 782 P.2d 1304 (1989); Helfrich v. Litke, 765 S.W.2d 659 (Mo. Ct. App. 1989); In re Hoffman's Estate, 213 Cal. App.2d 635, 639, 29 Cal. Rptr. 60, 63 (1963); 4 Am.Jur.2d, Appeal and Error § 253 (1962); see also Annotation, Right of Appeal from Judgment or Decree as Affected by Acceptance of Benefit Thereunder, 169 A.L.R. 985, 1010-1029 (1947) (citing cases).
In the instant case, Morris agreed that Taylor is entitled to $18,705 for the land. That amount is not in dispute. The controversy stems from Taylor's contention that he should be paid more. Thus the above-noted exception to the waiver rule clearly applies. Taylor, by cashing the $18,705 check, did not gain a benefit inconsistent with his appeal. Regardless of how the appeal is decided, he is still entitled to at *409 least $18,705. As a practical matter, therefore, the $18,705 is not at issue. Since the money is clearly Taylor's, there seems to be no good reason why he should not claim it sooner rather than later. We hold that Taylor did not waive his right to appeal by accepting the $18,705 check from Morris.
Turning now to the merits of the appeal, we note that Appellant Taylor raises only one issue: that the trial court erred in amending the default judgment on July 27, 1989, by abating the contract price without giving Taylor notice or opportunity to be heard. Taylor's argument is twofold: He first points out that he received inadequate notice of the July 27 contempt hearing at which the abatement occurred; secondly, he notes that he received no notice at all of the abatement motion itself.
Taylor's argument that he received inadequate notice of the July 27 contempt hearing is well founded. Morris mailed him notice of the rescheduled hearing on July 21, 1989. Under MRCP Rule 6, Taylor was entitled to five days' notice. The five-day notice requirement set out in Rule 6 is, for practical purposes, a seven-day requirement since weekends are not counted. See Moore v. Moore, 451 So.2d 226 (Miss. 1984). Additionally, Rule 6(e) adds three days to the period when notice is served by mail. Thus, the first day after July 21 when a hearing could properly have been scheduled would have been July 31, four days later than the hearing was actually held. It is therefore apparent that Morris did not comply with Rule 6 when notifying Taylor of the rescheduled contempt hearing.
The proceedings on Morris' motion to modify the default judgment clearly violated MRCP Rule 6 since Taylor was afforded no notice at all. Morris acknowledges that he offered an ore tenus motion at the July 27 contempt hearing seeking relief from the Default Judgment by way of an abatement of purchase price. Morris apparently offered "newly discovered evidence" that Taylor owned only a one-half undivided interest in the property. The ore tenus motion, therefore, falls under MRCP Rule 60(b). MRCP Rule 6(d) requires that notice of a Rule 60 motion be served "not later than five days before the time fixed for such hearing." Rule 6(d) expressly applies to "written motions." However, a party should not be permitted to circumvent notice requirements simply by offering a motion orally instead of a written one.
Despite Morris' dual violation of Rule 6, we see no need to reverse the chancellor's July 27 modification of the default judgment. Given the circumstances, proper notice would have been largely a pointless exercise. Taylor does not dispute the fact that he holds title to only a one-half undivided interest in the property that Morris seeks to purchase. His only contention is that the chancellor should not have halved the purchase price without affording him an opportunity to argue for a higher price. In connection with his August 8 motion to set aside the amended judgment, Taylor proffered nothing to indicate that his one-half interest was worth more than the other one-half interest.[2] Since the interests are undivided, there is no apparent way that Taylor's interest could command a higher value than the other. By reducing the purchase price in pro rata proportion to Taylor's interest, therefore, the chancellor ruled with unassailable logic. While the lower court undoubtedly erred in amending his judgment based on a hearing of which Taylor received inadequate notice, the error is harmless in this case since a properly noticed hearing would have produced the same result. Had the results been different, the failed notice requirement would demand reversal.
Notice concerns aside, there was nothing improper in the chancellor's abatement of the purchase price to conform with Taylor's conveyable interest. See Matthews v. Patterson, 2 How. (3 Miss.) 729 (1838) (in action seeking specific performance of land sales contract, Mississippi High Court of Errors and Appeals affirmed chancellor's grant of specific performance and directed "that an account be taken of the value of the ... [portion] to which the defendant had no title"); see also 71 Am.Jur.2d Specific *410 Performance § 70, 129, 175 (1973); 81 C.J.S. Specific Performance § 23 (1977).

CONCLUSION
We find that Taylor received inadequate notice of the hearing at which the trial court entertained Morris' motion to amend the June 27, 1989, default judgment. We further find, however, that the error does not require reversal since there is no conceivable way Taylor could have obtained a different result even if he had received appropriate notice. Accordingly, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] August 7 actually falls eleven days after July 27. In 1989, however, August 6 fell on Sunday. MRCP Rule 6(a) provides that when computing a prescribed time period, the last day shall not be counted if it falls on a weekend. For purposes of Rule 6, therefore, Taylor's motion was served within ten days of July 27, 1989.
[2] The other one-half undivided interest is owned by Taylor's wife.